## UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

| | | |
|---|---|---|
| BRIAN MEYERS, on behalf of himself and all others similarly situated,<br>      205 Acorn Drive<br>      North Aurora, IL 60542-1011 | ) ) ) ) ) | |
| | ) | Case No. 13-cv-2416 CM/GLR |
| Plaintiff, | ) | |
| v. | ) | Honorable Carlos Murguia |
| | ) | |
| GARMIN INTERNATIONAL, INC.<br>Serve Registered Agent:<br>      David Ayers<br>      1200 East 151st Street<br>      Olathe, Kansas 66062 | ) ) ) ) ) ) | |
| and | ) ) | |
| GARMIN U.S.A., INC.,<br>Serve Registered Agent:<br>      David Ayers<br>      1200 East 151st Street<br>      Olathe, Kansas 66062 | ) ) ) ) ) ) | |
| and | ) ) | |
| GARMIN LTD,<br>Serve Registered Agent:<br>      David Ayers<br>      1200 East 151st Street<br>      Olathe, Kansas 66062 | ) ) ) ) ) ) | |
| Defendants. | ) | |

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiff, Brian Meyers ("Plaintiff"), by and through undersigned counsel, on behalf of

himself and the Class and Subclasses defined below, brings this class action against Garmin

International, Inc. and Garmin USA, Inc. (collectively, "Garmin" or "Defendants"),[1] and for his

---

[1]  Plaintiff voluntarily dismissed a third entity, Garmin Ltd. from the case on September 16, 2013. *See* Dkt. No. 6.

Amended Complaint alleges, upon information and belief and based on the investigation of counsel, as follows:

## I.  NATURE OF THE CASE

1.  Garmin designed, manufactured, marketed, warranted, distributed, advertised, solicited for sale and sold from its corporate headquarters in Olathe, Kansas, expensive models of global positioning systems, sold under the brand name NÜVI. The devices were marketed and sold for automotive and pedestrian use, including battery-enabled, portable use. Garmin markets and advertises the NÜVI devices as containing a lithium-ion battery that enables the device to operate on battery power. The lithium-ion batteries that Garmin places in the devices are defective, however, in that they fail well before the end of their expected useful lives. Garmin's website, advertising and marketing materials, and user's guides omit any statements alerting customers to the material fact that the batteries Garmin installs in NÜVI devices are defective and have a propensity to fail before the end of their expected useful life, rendering the devices non-portable.

2.  Garmin refuses to replace or repair the batteries under warranty. If customers attempt to replace the batteries on their own, Garmin declares all applicable warranties null and void. As a result, customers are left with three undesirable options, none of which satisfies the benefit of the bargain: (1) pay Garmin a substantial fee to replace the defective battery (or to purchase a refurbished or new unit) even though it failed prior to the end of its useful life through no fault of the customer; (2) replace the battery on their own or through a more cost-effective service, thereby voiding Garmin's warranty for the product; or (3) do nothing, thereby leaving them with a NÜVI that does not operate with the promised battery capability.

3.      To redress these wrongs, Plaintiff brings this action on behalf of the following Class and Subclasses:

**Class:**

All persons or entities in the United States who purchased a Garmin NÜVI brand portable navigation device (the "Class").

**Battery Failure Subclass:**

All persons or entities in the United States who purchased a Garmin NÜVI brand portable navigation device and experienced battery failure within two years of purchase (the "Battery Failure Subclass").

**Warranty Denial Subclass**

All persons or entities in the United States who purchased a Garmin NÜVI brand portable navigation device, experienced battery failure and submitted the device to Garmin for battery repair or replacement within two years of purchase, and did not receive such repairs or replacement free of charge (the "Warranty Denial Subclass").

4.      Plaintiff brings these claims on behalf of himself and the Class under Kansas law. As alleged in more detail below, Garmin includes in its terms of use for consumers a Kansas choice-of-law provision and a District of Kansas forum selection clause. In addition, Garmin is headquartered in Olathe, Kansas. Based on Garmin's public statements regarding its corporate headquarters and policies, the following occurred in and emanated from its Kansas headquarters: the testing of the NÜVI products and batteries at issue; the advertisements, solicitations, representations and omissions regarding the NÜVI products and batteries at issue; and the warranty and return policies for the NÜVI products and batteries at issue.

## II.     JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(b), as the Parties are citizens of different states and the amount in controversy exceeds seventy-five thousand dollars ($75,000). This Court also has subject matter jurisdiction pursuant to 28 U.S.C.

§ 1332(d)(2) and the Class Action Fairness Act because there is minimal diversity, the amount in controversy exceeds five million dollars ($5,000,000), and there are more than 100 members of the proposed Class.

6.     Venue is proper in this district pursuant to 28 U.S.C. § 1391, *et seq.*, because Defendants are headquartered in this District and the acts and omissions giving rise to the claims asserted herein occurred in this District.

## III.   PARTIES

**Plaintiff**

7.     Plaintiff Brian Meyers ("Plaintiff") is a resident of the State of Illinois.  In 2011, Plaintiff reviewed the Garmin website (https://buy.garmin.com/en-US/US/index.ep), which then and now advertises and offers for sale various Garmin NÜVI products.  Plaintiff reviewed information concerning several models, including the Garmin NÜVI 2460 LMT GPS system. The Garmin webpage[2] for this particular NÜVI device identified various product features and specifications.  It also identified the battery installed in the NÜVI device: a lithium-ion battery with a battery life of three hours.  Significantly, Garmin's webpage failed to mention that the battery's expected useful life would be less than two years.

8.     On August 5, 2011, Plaintiff purchased a Garmin NÜVI 2460 LMT GPS device for $259.99 through an authorized Garmin dealer, J&R Music and Computer World or "J & R Electronics," which Garmin lists as one of its authorized dealers on its website.  *See* http://www8.garmin.com/cgi-bin/online/online?dealer_type=Consumer&SUBMIT=Show+Dealers.     Immediately     after

---

[2]   The most current iteration of this page (https://buy.garmin.com/en-US/US/on-the-road/discontinued/nuvi-2460lmt/prod87052.html) indicates that the item is discontinued.  The page is otherwise identical to the page viewed by Plaintiff prior to making his purchase.

purchasing his NÜVI device and before first using it, Plaintiff registered the device with Garmin. Product registration is an essential step for Garmin NÜVI owners, and it is required in order to access and update many essential NÜVI functions, including map updates needed to ensure that NÜVI devices function properly. As alleged in more detail below, Garmin's interactive website for registering product devices (http://software.garmin.com/en-US/express.html) contains "terms of use" that include a Kansas choice-of-law provision and a District of Kansas forum selection clause (http://www.garmin.com/en-US/legal/terms-of-use).

9.      In December 2012, Plaintiff attempted to preprogram his NÜVI device for an upcoming trip and was prompted to recharge the device after minimal use, a common early symptom of battery failure.  Plaintiff observed during subsequent uses that the device's battery life continued to decrease, requiring him to connect the device to an external power source in order to preserve functionality. On April 7, 2013, Plaintiff contacted Garmin customer service through Garmin's website, which then directed him to email product.support@garmin.com. As alleged in more detail below, Garmin's product support page contains "terms of use" that include a Kansas choice-of-law provision and a District of Kansas forum selection clause (http://www.garmin.com/en-US/legal/terms-of-use). Shortly thereafter, Garmin responded by email. Garmin's email provided a troubleshooting guide intended to resolve battery issues. Plaintiff followed the detailed instructions to no avail.

10.      Plaintiff contacted Garmin again in June 2013 by telephone. Plaintiff requested that Garmin replace the battery in his NÜVI unit because it had failed. In response, Garmin advised Plaintiff that it does not offer a battery replacement service. Garmin instead offered to "overhaul" Plaintiff's unit for $120, or a little less than half of what the unit originally cost.

**Defendants**

11.     Garmin International, Inc. is a Kansas corporation with its principal place of business at 1200 East 151st Street, Olathe, Kansas.

12.     Garmin USA, Inc. is a Delaware corporation with its principal place of business also located at 1200 East 151st Street, Olathe, Kansas.

13.     Garmin International, Inc. and Garmin USA, Inc. are referred to collectively herein as "Garmin" or "Defendants."

## IV.     APPLICATION OF KANSAS LAW

14.     Kansas substantive law applies to the claims of Plaintiff and the Class.

15.     According to Defendants, Garmin's Olathe, Kansas headquarters is "where the majority of product design and development work is conducted," "where … products are warehoused, distributed, and supported for North, Central and South America," and where "[m]arketing support is provided for U.S. sales." Garmin's Olathe, Kansas headquarters also serves as the hub for the development of all Garmin corporate policy, and marketing and product support work and decision making. Accordingly, Garmin's testing of the NÜVI products and batteries at issue, its preparation of sales, advertising and marketing materials, its formulation of warranty and product support policies, and its policies concerning the denial of warranty claims emanated from its Kansas headquarters.

16.     Garmin directs customers seeking warranty coverage or service to contact product support by phone at (800) 800-1020 or (913) 397-8200 or by facsimile at (913) 397-8282. These phone and fax numbers appear to connect to facilities in Olathe, Kansas. Garmin also directs customers to send their products to 1200 E. 151st St., Olathe, Kansas 66062.

17.     Defendants' website,  http://www8.garmin.com/aboutGarmin/servicecenter.html,
indicates that its Customer Service Center, where product repairs are accepted, is located within
its headquarters in Olathe, Kansas.

18.     Garmin's webpage, www.garmin.com/en-US/legal/shopterms, provides:

> Any purchase of Garmin products by Buyer ("Order") shall be governed solely by
> these Terms and Conditions of Sale ("Conditions of Sale") and any other written
> provisions mutually agreed upon.

www.garmin.com/en-US/legal/shopterms (Terms and Conditions ¶ 1.1). The terms and
conditions in turn require purchasers to agree to the following Kansas choice of law provision:

> The purchase-sale relationship between Buyer and Garmin shall be governed by
> and construed in accordance with the laws of the State of Kansas, without
> reference to the principles of conflict of laws.

www.garmin.com/en-US/legal/shopterms (Terms and Conditions ¶ 22).   These Terms and
Conditions, including the Kansas choice of law provision, presumably apply to authorized
dealers who purchase devices from Garmin.

19.     Garmin's User Manual, including the manual for the device Plaintiff purchased,
informs customers desiring warranty or other product service to view its webpage: "Contacting
Garmin Product Support … In the USA, go to www.garmin.com/support or contact Garmin USA
by phone at (800) 800.1020." Garmin's website (www.garmin.com/support), in turn, contains
"terms of use" that requires consumers to agree to the following Kansas choice of law provision
and to file suit in the District of Kansas (or Kansas state court):

> Except to the extent provided below in this paragraph, all legal issues arising from
> or related to the use of any Garmin Site will be construed in accordance with and
> determined by the laws of the State of Kansas applicable to contracts entered into
> and performed within the State of Kansas without respect to its conflict of laws
> principles. By using a Garmin Site, you agree that the exclusive forum for any
> claims or causes of action arising out of your use of the Garmin Site is the United
> States District Court for the District of Kansas, or any Kansas State court sitting
> in Johnson County. You hereby irrevocably waive, to the fullest extent permitted

by law, any objection which you may now or hereafter have to the laying of the venue of any such proceeding brought in such a court and any claim that any such proceeding brought in such a court has been brought in an inconvenient forum.

\*\*\*

In the event of a complaint, or to request further information, the provider may be contacted in writing at Garmin International, Inc., 1200 East 151st Street, Olathe, Kansas 66062, USA, by telephone at (913) 397-8200 (ask for the webmaster), or by e-mail at webmaster@garmin.com.

www.garmin.com/en-US/legal/terms-of-use ("General" paragraph) (underlining added).

20.     Consumers who purchase devices through Garmin's website, or who register a device with Garmin after purchasing from an authorized dealer, are required to create an account and agree to the "Terms and Conditions," provided on Garmin's webpage, www.garmin.com/en-US/legal/terms-of-use. The terms and conditions contain the same Kansas choice of law provision set forth above.

21.     As alleged above, Plaintiff reviewed Garmin's website before purchasing his NÜVI device from an authorized Garmin dealer, and registered his device using the interactive Garmin webpage that requires consumers to agree to the Terms and Conditions, including the Kansas choice of law provision and the District of Kansas forum selection clause.

## FACTUAL ALLEGATIONS

### A.     Rechargeable Lithium-Ion Batteries

22.     Lithium-ion ("Li-Io") batteries are the batteries most commonly used in consumer electronics such as NÜVI products.  Li-Io batteries generally consist of a metal case containing three thin sheets pressed together: a positive electrode made of Lithium cobalt oxide; a negative electrode made of carbon; and a separator, a very thin sheet of micro-perforated plastic that separates the positive and negative electrodes while allowing ions to pass through.

23.     Inside the case, these sheets are submerged in an organic solvent that acts as the electrolyte. When the battery charges, lithium ions move through the electrolyte from the positive electrode to the negative electrode and attach to the carbon. During discharge (i.e., battery use) the lithium ions move back to the $LiCoO_2$ from the carbon. The movement of these lithium ions happens at a fairly high voltage, so each cell produces 3.7 volts. This is much higher than the 1.5 volts typical of a normal AA alkaline cell and helps make lithium-ion batteries more compact for use in small devices like many consumer electronics.

24.     A Li-Io battery's lifespan is approximately 1,000 charge cycles, or about 4 years under normal operating conditions.

**B.     The Batteries Used in Garmin NÜVI Devices Are Defective**

25.     Garmin NÜVI products are portable global positioning systems and Garmin's most profitable brand.  All NÜVI models provide a full-featured GPS navigator, and different NÜVI models offer various additional features, such as map and traffic updates, wider display screens and voice activated navigation.  In fiscal years 2009-2011, the NÜVI class of products represented well-over 40% of Garmin's total consolidated revenues. Garmin's total revenues during this period were over $8 billion. Assuming an average price of $300 per NÜVI unit would mean Garmin sold approximately 13.1 million NÜVI units during these years, and, presumably, approximately 4 million additional units in fiscal year 2012.

26.     Most NÜVI models are distributed and sold with a non-user-replaceable 3.7V Li-Io rechargeable battery. NÜVI devices also come equipped with an A/C cable so that they can operate without depleting the Li-Io battery. Although the devices may operate without battery power, Garmin includes a rechargeable battery in all NÜVI products because it markets the devices as being usable in situations or vehicles where the device cannot be plugged in to an

external power source during ordinary and intended use.  In fact, Garmin itself refers to NÜVI models as *portable* navigation devices, or "PNDs."

27.     The Li-Io batteries used in NÜVI devices are intended to, and should, have a useful life much longer than that experienced by Plaintiff and other members of the Class in order to ensure portable functionality. Indeed, Garmin advises consumers who contact Garmin concerning battery life that NÜVI batteries are designed to last at least four years.

28.     Garmin knows or should know that the Li-Io batteries used in NÜVI products are prone to fail prematurely. It appears that at least thousands of NÜVI owners have contacted Garmin to complain about premature battery failure and/or attempted to file a warranty claim. NÜVI owners who have seen their product fail have posted numerous complaints online during the relevant period. The following are some examples of customer complaints regarding to NUVI batteries:

| NÜVI® model | Text of Complaint (and Source) | Complaint Date |
|---|---|---|
| 2460 LMT (Current) | "2460 LMT … Battery would not hold a charge. Purchased new battery – 8 hour ac charge. Charge lasted 37 minutes. Garmin suggested they replace at $120.00. … Do I have other options to save 2460LMT?" http://forums.gpsreview.net/viewtopic.php?t=27910 | 06/28/13 |
| 2595 (Current) | "Poor charging: Garmin tech suggested taking the unit home every night to charge. Are they nuts?" http://www.complaintsboard.com/complaints/garmin-nuvi-2595lmt-gps-sucks-c672914.html | 05/31/13 |
| 1450T (Current) | "Garmin Nuvi 1450 will not charge. One week out of warranty. I approached Garmin twice and my request for a solution was acknowledged with advice they'd be back to me in three days. Absolutely nil further response." http://www.complaintsboard.com/complaints/garmin-no-help-with-problem-c638198.html | 01/31/13 |

| NÜVI® model | Text of Complaint (and Source) | Complaint Date |
|---|---|---|
| 710 | …[W]hy does Garmin not realize that they have a defect in the battery of the product and try to help us? I went the same root like you[.]"<br><br>http://mythreecents.com/showReview.cgi?id=87317 | 01/21/13 |
| 360<br><br>(Current) | "After two years and one month, my Garmin Nuvi 360 was updated for lifetime maps at a cost of $129 earlier this month, and within 10 days the battery failed, it unfit for portable use. I am out $129. Garmin declined to make any accommodation. DON'T BUY GARMIN."  Complaint posted sometime before December 24, 2011.<br><br>http://www.complaintsboard.com/complaints/garmin-lumberton-new-jersey-c219428.html | 12/24/11 |
| 660<br><br>(Current) | "My Nuvi 660 battery will neither charge up, nor hold a charge. Regardless of how long it is plugged in[to] either my Garmin charger, or my car, it only shows one battery bar, and the battery will power the Nuvi for about 4 minutes. …"<br><br>http://forums.gpsreview.net/viewtopic.php?t=23694 | 08/19/11 |
| 650 | "Some time ago I purchased a Garmin NÜVI 650. It was not a cheap unit. It lasted about 6 months before the rechargeable battery died. I complained to Garmin about it and also about the fact that the user cannot service (change the battery). At that time they had me send the unit back. What they sent back looked like a used unit and they did not even bother to transfer all the info from the old unit to the new one. The second unit lasted about 6-7 months and the battery has died again. The only way to use it now is with the power cord. Using it on my motorcycle is now impossible. Contacted Garmin again. Because this has been an on going issue I thought maybe they would try to make it right again but no. Now they want $79.00 and only offer a 90 day warranty. Big deal. Based on past history, the unit will only last just a little | 09/23/10 |

| NÜVI® model | Text of Complaint (and Source) | Complaint Date |
|---|---|---|
| | longer than the warranty and then the problem will return and I'd be out the money and still have the same problem. Guess I'll look at Tom Tom or Magellan instead for the next one. … I do have a recharger. After charging overnight, it still dies after about 15 min. It only works now with the power cord plugged into the car. This unit is only about 6 months old. It got replaced by Garmin once before because of the same problem. Seems to be a recurring theme. At the time, it was not an inexpensive unit, it was top of the line." http://mythreecents.com/showReview.cgi?id=87317 | |
| 755 | "My first 755 had a defective battery out of the box. It wouldn't take more than a 63% charge, would only last about 15-20 min … and would be dead after sitting in the off position in a matter of hours…" http://forums.gpsreview.net/viewtopic.php?t=19329 | 06/04/10 |

29.     This is not the first time that Garmin's battery has been called into question.  In 2010, Garmin recalled 1.3 million NÜVI devices manufactured with defective batteries sourced from third-party providers.  Those batteries were prone to overheating that was likely to cause them to fail prematurely or create a fire hazard.

30.     NÜVI devices are equipped with batteries that are exceedingly difficult to replace or which Garmin has described as non-user-replaceable. Owner's manuals included with NÜVI devices highlight the dangers faced by consumers attempting to replace a NÜVI battery:

Do not use a sharp object to remove the battery. Keep the battery away from children. Do not disassemble, puncture, or damage the battery. If using an external battery charger, only use the Garmin accessory approved for your product. Only replace the battery with the correct replacement battery. Using another battery presents a risk of fire or explosion.

31.     Despite providing instructions concerning the removal of the battery (for user-replaceable battery devices), Garmin has made the batteries extremely difficult to replace without damaging the device, which Garmin considers a warranty-voiding event. With respect to non-replaceable battery devices, Garmin admonishes owners to not remove the battery and informs them that, if they do, the warranty is null and void.  NÜVI owner's manuals and the *Important Product and Safety Information* pamphlet included with all NÜVI devices admonish Class members "not [to] remove or attempt to remove [designated] non-user-replaceable battery." Any attempt to replace a non-user-replaceable battery voids Garmin's one-year manufacturer warranty.  The "non-user-replaceable" designation means exactly what it says – the user cannot replace the battery even if it begins to fail. As a result, once the NÜVI's non-user-replaceable battery fails, the device is no longer portable or suitable for its intended purpose.

32.     Despite consumers' inability to replace the battery included with NÜVI devices, Garmin manufactures, distributes, markets and warrants NÜVI products containing defective Li-Io batteries that are prone to fail prematurely without disclosing this material defect to Plaintiff and members of the Class and Subclasses.

33.     Indeed, Garmin's United States website is replete with information concerning the attributes and specifications of all NÜVI devices and their components, but makes no mention of the Li-Io battery's unexpectedly short useful life.  Garmin attempts to solicit customers to purchase its products by touting, *inter alia*, NÜVI devices' rechargeable batteries and three-hour battery life.  However, nowhere does Garmin inform potential purchasers that NÜVI batteries likely will die in less than two years. For instance, the Garmin webpage[3] for the NÜVI 2460 LMT GPS device identified various product features and specifications.  It also identified the

---

[3] https://buy.garmin.com/en-US/US/on-the-road/discontinued/nuvi-2460lmt/prod87052.html

battery installed in the NÜVI device: a lithium-ion battery with a battery life of three hours However, the webpage failed to mention the battery's surprisingly short useful life.

34.     Similarly, neither the *Safety Information* pamphlet nor the owner's manuals distributed with NÜVI devices includes any mention of the battery's brief useful life. While these materials provide extensive information concerning the battery, they fail to disclose that the battery is prone to fail shortly after purchase through no fault of the consumer.

## C.     Garmin's Limited Warranty is Unconscionable

35.     All Garmin products are sold with a one-year limited warranty:

Our non-aviation products are warranted to be free from defects in materials or workmanship for 1 year from the date of purchase. Within this period, Garmin will, at its sole option, repair or replace any components that fail in normal use. Such repairs or replacement will be made at no charge to the customer for parts or labor, provided the customer shall be responsible for any transportation cost. This warranty does not apply to: (i) cosmetic damage, such as scratches, nicks and dents; (ii) consumable parts, such as batteries, unless product damage has occurred due to a defect in materials or workmanship; (iii) damage caused by accident, abuse, misuse, water, flood, fire, or other acts of nature or external causes; (iv) damage caused by service performed by anyone who is not an authorized service provider of Garmin; (v) damage to a product that has been modified or altered without the written permission of Garmin; or (vi) damage to a product that has been connected to power and/or data cables that are not supplied by Garmin.  In addition, Garmin reserves the right to refuse warranty claims against products or services that are obtained and/or used in contravention of the laws of any country …

Repairs have a 90 day warranty. If the unit sent in is still under its original warranty, then the new warranty is 90 days or to the end of the original 1 year warranty, depending upon which is longer.

THE WARRANTIES AND REMEDIES CONTAINED HEREIN ARE EXCLUSIVE AND IN LIEU OF ALL OTHER WARRANTIES EXPRESS, IMPLIED, OR STATUTORY, INCLUDING ANY LIABILITY ARISING UNDER ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, STATUTORY OR OTHERWISE. THIS WARRANTY GIVES YOU SPECIFIC LEGAL RIGHTS, WHICH MAY VARY FROM STATE TO STATE.

IN NO EVENT SHALL GARMIN BE LIABLE FOR ANY INCIDENTAL, SPECIAL, INDIRECT, OR CONSEQUENTIAL DAMAGES, WHETHER RESULTING FROM THE USE, MISUSE, OR INABILITY TO USE THIS PRODUCT OR FROM DEFECTS IN THE PRODUCT. SOME STATES DO NOT ALLOW THE EXCLUSION OF INCIDENTAL OR CONSEQUENTIAL DAMAGES, SO THE ABOVE LIMITATIONS MAY NOT APPLY TO YOU.

Garmin retains the exclusive right to repair or replace (with a new or newly-overhauled replacement product) the device or software or offer a full refund of the purchase price at its sole discretion. SUCH REMEDY SHALL BE YOUR SOLE AND EXCLUSIVE REMEDY FOR ANY BREACH OF WARRANTY.

(underlining added).

36.     In sum, Garmin's warranty excludes batteries, and advises customers that they may not replace their batteries without voiding their warranty.

37.     Garmin refuses to repair or replace defective batteries for customers whose devices are still under warranty. As made clear by Garmin's limited warranty, Garmin presumes that battery problems are not the result of defects in materials or workmanship.  Instead, Garmin agrees to repair and/or replace the battery in an in-warranty NÜVI at the owner's expense.

38.     Out-of-warranty customers complaining of a defective battery have no viable alternative to purchasing a new or refurbished NÜVI from Garmin. Garmin provides complaining NÜVI owners with a refurbished device, but requires them to pay out of pocket for it and return the defective device. Class members unable or unwilling to pay for the replacement are left with nothing.

39.     Moreover, Garmin warrants its repairs for only 90 days, or through the end of the original one-year warranty period.  A consumer who experiences battery failure and incurs an out-of-pocket expense to repair the defective device may very well have to repeat the process shortly thereafter.

40.     Since NÜVI batteries tend to fail shortly outside of the warranty period – and given Garmin's knowledge of this concealed defect, unequal bargaining power, and other factors

discussed below – Garmin's attempt to limit the warranty with respect to its defective batteries is unconscionable.

41.     Moreover, if a device owner is unable to repair or replace the defective device, it becomes unsuitable for its intended purpose. NÜVIs are intended to be portable navigation devices. If NÜVI batteries fail prematurely, the device must be connected to an external power source in order to function and is no longer portable.

42.     Had Garmin disclosed the defect, Plaintiff and the Class would have paid less for their NÜVI than the amounts they actually paid, or would not have purchased it at all. Accordingly, Class members have suffered an ascertainable loss of money, property and/or loss in value of their NÜVI devices.

**D.     Purchase of a NÜVI Device Establishes Privity Among Class Members and Garmin**

43.     All ultimate purchasers of new NÜVI devices are required to register their products with Garmin, regardless of whether the device was purchased through an authorized dealer or through Garmin directly. Product registration is required in order to access and update many essential NÜVI functions, including map updates needed to ensure that NÜVI devices function properly.

44.     Purchasers register their product through Garmin's website and are required to create an account and agree to the "Terms and Conditions," available on Garmin's webpage, www.garmin.com/en-US/legal/terms-of-use. As alleged above, the terms and conditions contain a Kansas choice of law provision and a Kansas forum selection clause.

45.     Garmin also extends to all purchasers of new NÜVI devices an express limited warranty, regardless of whether the device was purchased directly through Garmin.  Thus, the

purchase of a new NÜVI device establishes a contractual relationship between Garmin and consumer purchasers.

46.     Moreover, Garmin and its authorized dealers are parties to various agreements concerning the sale of NÜVI devices in which the parties recognize that the authorized dealers are not the ultimate purchasers of those NÜVI products. Rather, the consumers who purchase these items from the authorized dealers are the intended ultimate purchasers.  Accordingly, Plaintiff and Class members are third-party beneficiaries of these agreements between Garmin and its authorized dealers.

## TOLLING OF THE STATUTE OF LIMITATIONS

47.     Any applicable statute(s) of limitation has been tolled by Garmin's knowing and active concealment and denial of the facts alleged herein.  Plaintiff and members of the Class could not have reasonably discovered the true nature of the defects alleged herein until the defects manifested themselves.

48.     Garmin was and remains under a continuing duty to disclose to Plaintiff and members of the Class the true character, quality and defective nature of the batteries utilized in NÜVI devices and that these defects are the result of poor design, production and or business practices, and may well require costly repairs and diminish the device's value.  As a result of the active concealment by Defendants of these defects, any and all applicable statutes of limitations have been tolled.

## CLASS ACTION ALLEGATIONS

49.     Plaintiff brings this action under Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3) on behalf of himself and the following Class and Subclasses:

**Class:**

All persons or entities in the United States who purchased a Garmin NÜVI brand portable navigation device (the "Class").

**Battery Failure Subclass:**

All persons or entities in the United States who purchased a Garmin NÜVI brand portable navigation device and experienced battery failure within two years of purchase (the "Battery Failure Subclass").

**Warranty Denial Subclass**

All persons or entities in the United States who purchased a Garmin NÜVI brand portable navigation device, experienced battery failure and submitted the device to Garmin for battery repair or replacement within two years of purchase, and did not receive such repairs or replacement free of charge (the "Warranty Denial Subclass").

Excluded from the Class and Subclasses are: (a) any Judge or Magistrate Judge presiding over this action and members of their families; (b) Defendants and their officers directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, subsidiaries and affiliates; (c) all persons who properly execute and file a timely request for exclusion from the Class; and (d) persons claiming personal injuries as a result of the defects alleged herein.

50.     Pursuant to Fed. R. Civ. P. 23(a)(1), members of the Class, the Battery Failure Subclass and the Warranty Denial Subclass are so numerous that joinder of all Class members is impracticable. The total number of Class and Subclass members is believed to include hundreds of thousands of persons geographically dispersed throughout the United States. Upon information and belief, the Class, the Battery Failure Subclass and the Warranty Denial Subclass are ascertainable and identifiable from Defendants' records. If necessary, notice of this action may be affected to the proposed Class and Subclasses through publication, and for the majority, if not all, class members, direct notice may be achieved through use of customer information from Defendants' records.

51.     Pursuant to Fed. R. Civ. P. 23(a)(2), the claims of Plaintiff, Class, the Battery Failure Subclass and the Warranty Denial Subclass involve common issues of law or fact. The gravamen of this action is whether the batteries utilized in NÜVI devices are defective and prone to premature failure, contrary to Defendants' representations and omissions. Common questions of law or fact include:

**For the Class, the Battery Failure Subclass and the Warranty Denial Subclass**

a.      Whether NÜVI batteries are defectively designed, manufactured, stored or assembled and prone to premature failure;

b.      Whether NÜVI owner's manuals and the *Important Product and Safety Information* pamphlet omit material information concerning the battery's propensity to fail prematurely;

c.      Whether Garmin knowingly failed to disclose and warn of the defects alleged herein with the intent that others rely upon such concealment, suppression, or omission;

d.      Whether Garmin had a duty to disclose to its consumers material facts concerning the defect alleged herein;

e.      Whether Garmin's uniform policy of not repairing or replacing defective batteries free of charge is an unconscionable practice or otherwise a violation of the Kansas Consumer Protection Act;

f.      Whether Garmin should be subject to final injunctive relief or a declaratory judgment requiring it to fully and adequately inform consumers of the defects alleged herein and recall, inspect and, as necessary, effectively repair NÜVI devices free of charge;

g.      Whether Garmin's conduct as alleged herein constitutes a violation of applicable Kansas warranty and consumer protection laws;

h.      Whether Garmin is liable for damages resulting from the diminished value imposed by the defects alleged herein, including benefit of the bargain and diminution in value, and all other compensatory, incidental and punitive damages allowed under the pertinent laws, and the measure of such damages;

**For the Battery Failure Subclass and the Warranty Denial Subclass**

i.      Whether Garmin's uniform policy of refusing to repair NÜVI devices whose batteries failed prematurely constitutes a breach of express warranty;

j.      Whether Garmin should be subject to a declaratory judgment or final injunctive relief requiring it to repair, free of charge, all NÜVI devices whose batteries failed prematurely;

**For the Warranty Denial Subclass**

k.      Whether Garmin should be required to pay as damages all monies paid by customers who paid out-of-pocket for battery replacements or repairs or replacement units that Garmin should have repaired or replaced free of charge in the first instance.

52.     Pursuant to Fed. R. Civ. P. 23(a)(3), Plaintiff's claims are typical of the claims of the absent Class and subclass members, because all have been damaged by the same course of conduct. Specifically, Garmin's conduct in designing, manufacturing, marketing, advertising, warranting and selling NÜVI devices containing batteries that are materially defective, and Defendants' failure to honor the terms of its expressed and implied warranties.

53.     Pursuant to Fed. R. Civ. P. 23(a)(4), Plaintiff is a member of and will fairly and adequately protect the interests of the Class, the Battery Failure Subclass and the Warranty Denial Subclass. Plaintiff has no interest adverse to, or which directly and irrevocably conflicts with, the interests of the Class or Subclasses. Plaintiff has retained counsel experienced in

prosecuting complex litigation, including class action litigation involving the types of consumer protection and warranty claims asserted herein.

54.     The Class, Battery Failure Subclass and Warranty Denial Subclass should be certified pursuant to Rule 23(b)(3) because the common issues of law and fact identified above predominate over individual issues. The class action device is superior to other methods of adjudication because: the cost of individual litigation would greatly outweigh the amount of individual recovery such that individual Class and subclass members do not have an interest in individually controlling the prosecution or defense of separate actions; there is no current litigation concerning the claims asserted herein; it is desirable to concentrate the claims in this District because Garmin is headquartered here and has chosen the application of Kansas substantive law in its terms and conditions; and there are no difficulties in managing this litigation as a class action.

55.     The Class, Battery Failure Subclass and Warranty Denial Subclass should be certified pursuant to Rule 23(b)(2) because Garmin has acted or refused to act on grounds that apply to each member of the Class and subclasses, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class and subclasses as a whole.

<u>**COUNT I**</u>
**DECLARATORY RELIEF**
**(On behalf of the Class, Battery Failure Subclass and Warranty Denial Subclass)**

56.     Plaintiff re-alleges and incorporates the preceding paragraphs 1-55 as if fully set forth herein.

57.     There is an actual controversy between Garmin and Class members concerning whether the batteries used in NÜVI devices are defective and whether the repair of such defects should be covered by Garmin's express warranty or the implied warranty of merchantability.

58.     Pursuant to 28 U.S.C. § 2201, this Court may "declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

59.     As described herein, NÜVI devices are manufactured, sold, distributed and warranted with defective 3.7V rechargeable Li-Io batteries that are prone to fail prematurely.

60.     Accordingly, Plaintiff, on behalf of the Class, the Battery Failure Subclass and the Warranty Denial Subclass seeks a declaration that NÜVI devices have common defects in their design and/or manufacture and that any future repairs involving premature battery failure should be covered under the Garmin's express limited warranty or the implied warranty of merchantability.

<u>COUNT II</u>
**VIOLATION OF THE KANSAS CONSUMER PROTECTION ACT**
**DECEPTIVE PRACTICES**
**(On behalf of the Class, Battery Failure Subclass and Warranty Denial Subclass)**

61.     Plaintiff re-alleges and incorporates the preceding paragraphs 1-55 as if fully set forth herein.

62.     The Kansas Consumer Protection Act ("KCPA") "shall be construed liberally to … (b) to protect consumers from suppliers who commit deceptive and unconscionable practices; [and] (c) to protect consumers from unbargained for warranty disclaimers." Kan. Stat. Ann. § 50-623.

63.     Garmin is a "supplier" of NÜVI devices as defined by the KCPA because it is a "manufacturer, distributor, dealer, seller, lessor, assignor, or other person who, in the ordinary course of business, solicits, engages in or enforces consumer transactions, whether or not dealing directly with the consumer."  Kan. Stat. Ann. § 50-624(l).

64.     Plaintiff and members of the Class were "consumers" as defined by the KCPA because he is an "individual … who [sought] or acquire[d] property or services for personal, family, household, business or agricultural purposes." *Id.* at § 50-624(b).

65.     Plaintiff and members of the Class participated in "consumer transactions" as defined by the KCPA when they purchased NÜVI devices because they purchased these devices based on solicitations emanating from Kansas, and made by Garmin, that omitted mention of the defects complained of herein. *Id.* at § 50-624(c).

66.     Plaintiff and members of the Class also participated in "consumer transactions" because the purchase of any new NÜVI device is "a sale, lease, assignment or other disposition for value of property or services within [the state of Kansas]." *Id.* Specifically, purchase of a NÜVI device requires the purchaser to (1) register the device through transmittal of an electronic form to Kansas in order to ensure functionality; and (2) agree to the Garmin website's terms of use, which require application of Kansas law.

67.     Specifically, Defendants engaged in deceptive conduct in violation of the KCPA by making willful and intentional omissions concerning the useful life of batteries used in NÜVI devices.  Defendants willfully failed to disclose that the batteries utilized in NÜVI devices are defective and prone to fail prematurely in order to secure the sale of these devices, and to offer them at a premium price.

68.     That NÜVI devices include defective batteries prone to fail prematurely is a material fact.

69.     Defendants did not, and have not, fully and truthfully disclosed to its customers the inherently defective nature of NÜVI devices, which was not readily discoverable until the defect actually manifested itself.

70.     Defendants intended that Plaintiff and all Class members rely on the acts of concealment and omissions, so that they would purchase NÜVI GPS systems.

71.     A causal nexus exists between Defendants' unlawful conduct and the ascertainable losses suffered by Plaintiff and the Class.

72.     Defendants' conduct caused Plaintiff and Class members to suffer an ascertainable loss and damages. Class members incurred an ascertainable loss when they received a device worth less than what Defendants promised.  The Battery Failure Subclass experienced an ascertainable loss when their battery prematurely failed, resulting in a device that no longer functioned as expected. For the Warranty Denial Subclass, damages include monies that they paid Defendants to repair or replace their defective battery.

73.     In addition, the Class is entitled to an injunction ordering Defendants to disclose the existence of the defect alleged herein and preventing Defendants from refusing to pay for the repair or replacement of original batteries that fail prior to the end of their expected useful life.

<u>**COUNT III**</u>
**VIOLATION OF THE KANSAS CONSUMER PROTECTION ACT**
**UNCONSCIONABLE PRACTICES**
**(On behalf of the Class, Battery Failure Subclass and Warranty Denial Subclass)**

74.     Plaintiff re-alleges and incorporates the preceding paragraphs 1-55 as if fully set forth herein.

75.     The Kansas Consumer Protection Act ("KCPA") does not permit merchants to "[e]xclude, modify or otherwise attempt to limit the implied warranties of merchantability as defined in K.S.A. 84-2-314, and amendments thereto … [or] (2)   exclude, modify or attempt to limit any remedy provided by law, including the measure of damages available, for a breach of implied warranty of merchantability and fitness for a particular purpose." Kan. Stat. Ann. § 50-639(a)(1)-(2).

24

76.     As set forth below, Defendants breached the implied warranty of merchantability by offering for sale NÜVI portable navigation devices that are not fit for the ordinary purpose for which NÜVI devices are sold – namely, on-the-go or portable navigation.

77.     By attempting to exclude the implied warranty of merchantability through its express limited warranty, Defendants have committed an unconscionable act in violation of the KCPA.

78.     The Class is entitled to an injunction prohibiting Defendants from refusing to cover the repair or replacement costs for original batteries that fail prior to the end of their useful life.

79.     The Battery Failure Subclass and the Warranty Denial Subclass have suffered damages and an ascertainable loss as a result of Defendants' unconscionable conduct. The Battery Failure Subclass experienced damages and ascertainable loss when their battery prematurely failed, resulting in a device that no longer functioned as expected. The Warranty Denial Subclass suffered damages when they paid Defendants monies to repair or replace their defective battery.

### COUNT IV
### BREACH OF THE IMPLIED WARRANTY OF MERCHANTIBILITY
### Kan. Stat. Ann. § 84-2-314
### (On behalf of the Class, Battery Failure Subclass and Warranty Denial Subclass)

80.     Plaintiff re-alleges and incorporates the preceding paragraphs 1-55 as if fully set forth herein.

81.     Defendants are merchants with respect to portable navigation devices.

82.     Defendants knowingly placed into the stream of commerce NÜVI-brand GPS devices incorporating batteries that are prone to fail before the end of their expected useful life. When the battery fails, the devices may no longer be used portably because they must be

connected to an extern power source in order to function.  As such, NÜVI devices are not fit for the ordinary purposes for which such goods are used.

83.     Defendants have refused to repair and/or replace defective devices at no cost to Plaintiff and the Class, thereby breaching the implied warranty of merchantability.

84.     Plaintiff and Class members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Defendants' conduct described herein.

85.     The Class is entitled to an injunction prohibiting Defendants from refusing to cover the repair or replacement costs for original batteries that fail prior to the end of their useful life.

86.     The Battery Failure Subclass and the Warranty Denial Subclass have suffered damages and an ascertainable loss as a result of Defendants' breach of the implied warranty of merchantability. For the Battery Failure Subclass, the damages and ascertainable loss was occurred when their battery prematurely failed, resulting in a device that no longer functioned as expected. For the Warranty Denial Subclass, damages include monies that they paid Defendants to repair or replace their defective battery.

## COUNT V
### UNJUST ENRICHMENT
### (On behalf of the Class)

87.     Plaintiff re-alleges and incorporates the preceding paragraphs 1-55 as if fully set forth herein.  This count is pled in the alternative to the contract claim.

88.     Plaintiff and the Class conferred a benefit on Defendants. In particular, Plaintiff and the Class paid money for Defendants' NÜVI devices. Defendants have knowledge that this benefit was conferred upon them.

89.     Defendants have been unjustly enriched at the expense of Plaintiff and the Class because the NÜVI devices delivered are inferior to the NÜVI devices it promised to deliver. Defendants' retention of this benefit under these circumstances would be inequitable.

90.     Defendants' revenues from its sale of defective NÜVI devices and all other benefits which it has received from Plaintiff and the Class should be disgorged, and Plaintiff and the Class are entitled to an amount equal to the difference in value between the NÜVI devices Defendants represented would be delivered and those actually delivered.

<u>COUNT VI</u>
**BREACH OF EXPRESS WARRANTY**
**(On behalf of the Battery Failure Subclass and Warranty Denial Subclass)**

91.     Plaintiff re-alleges and incorporates the preceding paragraphs 1-55 as if fully set forth herein.

92.     Defendants also expressly warranted "against defects in materials or workmanship," and that any such defects will be repaired without charge for parts or labor during the warranty period.

93.     Defendants breached this warranty by selling to Plaintiff and Subclass members devices with a known defect, i.e. a battery prone to fail well before the end of its expected useful life. Defendants willfully failed to disclose that the batteries in NÜVI devices are defective and prone to fail prematurely as alleged above in order to secure the sale of these devices, and to offer them at a premium price.

94.     As a result of Defendants' willful omissions, he durational and other limits imposed on Defendants' express limited warranty are unconscionable and unenforceable under the circumstances here.  Specifically, Defendants' warranty limitation is unenforceable because, as alleged above, they knowingly sold a defective product without informing consumers about

27

the defect.   Accordingly, the time limits contained in Defendants' warranty period are unconscionable and inadequate to protect Plaintiff and members of the Class and Subclasses. Among other things, Plaintiff and Class members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Class members, and Defendants knew or should have known that NÜVI devices were defective at the time of sale and would fail well before their useful lives, but shortly after their express warranty expired.

95.     As a result of the Defendants' actions, Plaintiff, the Battery Failure Subclass and Warranty Denial Subclass have suffered economic damages including, for the Battery Failure Subclass and the Warranty Denial Subclass, loss of use of the device as expected, and, for the Warranty Denial Subclass, monies paid to repair or replace the device or battery.

96.     Plaintiff and members of the Battery Failure Subclass and the Warranty Denial Subclass have complied with all obligations under the warranty, including providing any notice required thereunder, or otherwise have been excused from performance of said obligations as a result of Defendants' conduct described herein.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself and the Class, prays for judgment against Defendants as follows:

A.      An Order certifying the Class, the Battery Failure Subclass and the Warranty Denial Subclass pursuant to Rule 23;

B.      An Order appointing Plaintiff as class representative and his counsel  to represent the Class and Sub-Class pursuant to Rule 23;

C.      A Declaration that the batteries included with NÜVI devices are defective;

D.      An Order awarding injunctive relief by requiring Garmin to issue corrective actions including notification, recall, and repair of NÜVI devices;

E.      Payment to the Class, the Battery Failure Subclass and the Warranty Denial Subclass of all damages associated with the defective products, in an amount to be proven at trial;

F.      Restitution and disgorgement as authorized by law;

G.      An award of attorneys' fees and costs, as provided by law and/or as would be reasonable from any recovery of monies recovered for or benefits bestowed on the Class, the Battery Failure Subclass and the Warranty Denial Subclass.

H.      Interest as provided by law, including but not limited to pre-judgment and post-judgment interest as provided by rule or statute; and

I.      Such other and further relief as this Court may deem just, equitable, or proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury for all issues so triable.

Respectfully Submitted,

Dated: October 18, 2013            /s/ James P. Frickleton
                                   James P. Frickleton, No. 20602
                                   Edward D. Robertson, Jr., No. 23028
                                   BARTIMUS, FRICKLETON & GORNY, P.C.
                                   11150 Overbrook Road, Suite 200
                                   Leawood, KS 66211
                                   Phone: (913) 266-2300
                                   Facsimile: (913) 266-2366
                                   Email: jimf@bflawfirm.com
                                   krobertson@bflawfirm.com

                                   Bryan L. Clobes (Admitted Pro Hac Vice)
                                   CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP
                                   1101 Market Street

Philadelphia, PA 19107
Phone: (215) 864-2800
Facsimile: (215) 864-2810
Email: bclobes@caffertyclobes.com

Anthony F. Fata (Motion for Pro Hac Vice pending)
Daniel O. Herrera (Motion for Pro Hac Vice pending)
CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP
30 N. LaSalle, Suite 3200
Chicago, Illinois 60602
Phone: (312) 782-4880
Facsimile: (312) 782-4485
Email: afata@caffertyclobes.com

**Counsel for Plaintiff**