**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| BRIAN MEYERS, on behalf of himself and all others similarly situated, ) ) ) | |
| Plaintiff, ) ) | |
| vs. ) | Case No. 13-CV-2416-CM-GLR |
| ) GARMIN INTERNATIONAL, INC., ) et al., ) ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

Brian Meyers ("plaintiff"), on behalf of himself and all others similarly situated, brings this action against Garmin International, Inc. and Garmin U.S.A., Inc. (collectively "defendants"). This matter is before the court on Defendants' Motion to Dismiss (Doc. 16).

**I. Factual Background**

Defendants manufacture, market and sell NÜVI-brand global positioning systems ("GPS"). Defendants refer to NÜVI GPS devices as "PNDs," or portable navigation devices, representing that all PNDs include a rechargeable battery so that the devices are suitable for on-the-go use. Defendants carry out their American operations–including the manufacture, sale, marketing, warranting and web-based advertising of NÜVI devices–from their Olathe, Kansas headquarters.

On August 5, 2011, plaintiff purchased a Garmin NÜVI 2460 LMT GPS device ("NÜVI 2460") from J&R Music and Computer World ("J&R"), which is an authorized dealer of defendants. Before plaintiff purchased his NÜVI 2460, plaintiff reviewed defendants' website and information therein concerning several models, including the NÜVI 2460. Defendants' webpage for NÜVI 2460 set forth various product features and included specifications for the pre-installed battery: a lithium-ion

battery with a battery life of three hours. Defendants' webpage did not include information regarding the battery's expected useful life.

Immediately after purchasing his NÜVI device and before first using it, plaintiff registered the device with defendants. In December 2012, plaintiff attempted to preprogram his NÜVI 2460 for an upcoming trip and was prompted to recharge the device after minimal use. Plaintiff observed during subsequent uses that the device's battery life continued to decrease, requiring him to connect the device to an external power source in order to preserve functionality.

On April 7, 2013, plaintiff contacted defendants' customer service through defendants' website, which then directed him to email product.support@garmin.com. Defendants responded by email, providing a troubleshooting guide intended to resolve battery issues. Plaintiff followed the instructions, but to no avail. Plaintiff contacted defendants again in June 2013 by telephone. Plaintiff requested that defendants replace the battery in his NÜVI unit because the battery had failed. In response, defendants advised plaintiff that they do not offer a battery replacement service. Defendants instead offered to "overhaul" plaintiff's unit for $120.

Plaintiff asserts in his First Amended Complaint claims for (1) declaratory relief; (2) violations of the Kansas Consumer Protection Act ("KCPA") for deceptive and unconscionable practices; (3) breach of the implied warranty of merchantability; (4) unjust enrichment; and (5) breach of express warranty. Plaintiff asserts these counts on behalf of himself and a putative class of "all persons or entities who purchased a Garmin NÜVI brand portable navigation device." Plaintiff also seeks to represent a subclass of those putative class members who "experienced battery failure within two years of purchase" and a subclass who additionally did not receive free repairs or replacement from defendants.

**II. Legal Standard**

The court will grant a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) only when the factual allegations fail to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although the factual allegations need not be detailed, the claims must set forth entitlement to relief "through more than labels, conclusions and a formulaic recitation of the elements of a cause of action." *In re Motor Fuel Temperature Sales Practices Litig.*, 534 F. Supp. 2d 1214, 1216 (D. Kan. 2008). The allegations must contain facts sufficient to state a claim that is plausible, rather than merely conceivable. *Id.* "All well-pleaded facts, as distinguished from conclusory allegations, must be taken as true." *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). The court construes any reasonable inferences from these facts in favor of the plaintiff. *Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006).

**III. Discussion**

With respect to each Count alleged by plaintiff, defendants contend that plaintiff has failed to state a claim upon which relief can be granted. The court will separately address each Count in turn.

**A. Kansas Consumer Protection Act (Counts II and III)**

Plaintiff alleges that defendants engaged in deceptive conduct in violation of the KCPA by making willful and intentional omissions concerning the useful life of the batteries used in NÜVI devices. Plaintiff also alleges that defendants engaged in unconscionable practices by attempting to exclude the implied warranty of merchantability through defendants' express limited warranty. Defendants argue that the consumer transaction about which plaintiff complains occurred outside Kansas, rendering plaintiff's allegations insufficient as a matter of law to state a claim under the KCPA.

The purpose of the KCPA is to protect consumers from suppliers who commit deceptive and unconscionable practices and to protect consumers from unbargained for warranty disclaimers. Kan. Stat. Ann. § 50-623. The court must liberally construe the KCPA to promote these policies. *Id.*; *Golden v. Den-Mat Corp.*, 276 P.3d 773, 790 (Kan. 2012) (KCPA requires broad and liberal construction).

The KCPA prohibits deceptive and unconscionable acts in connection with a consumer transaction. Kan. Stat. Ann. §§ 50–626(a); 50-627(a). The legislature has defined "consumer transaction" as the "sale, lease, assignment or other disposition for value of property or services *within this state* . . . to a consumer; or a solicitation by a supplier with respect to any of these dispositions." Kan. Stat. Ann. § 50-624(c) (emphasis added).

As alleged by plaintiff in his First Amended Complaint, defendants' principal place of business is their headquarters in Olathe, Kansas, "where the majority of product design and development work is conducted," "where . . . products are warehoused, distributed, and supported for North, Central and South America," and where "[m]arketing support is provided for U.S. sales." (Am. Compl. ¶ 15.) Defendants direct customers seeking warranty coverage or service to contact product support by phone or fax at numbers that appear to connect to their facilities in Olathe, Kansas.[1] (*Id.* ¶ 16.) Defendants' User Manual, including the manual for the device plaintiff purchased, informs customers desiring warranty or other product service to view its webpage: "Contacting Garmin Product Support . . . In the USA, go to www.garmin.com/support or contact Garmin USA by phone at (800) 800.1020." (*Id.* ¶ 19.) Defendants' website[2] indicates that its Customer Service Center, where product repairs are accepted, is located within its headquarters in Olathe, Kansas. (*Id.* ¶ 17.)

---

[1] Defendants direct their customers to phone (800) 800-1020 or (913) 397-8200 or fax to (913) 397-8282. (Am. Compl. ¶ 16.)

[2] http://www8.garmin.com/aboutGarmin/servicecenter.html

Defendants' website[3] provides that any purchase of defendants' products "shall be governed solely by these Terms and Conditions of Sale ("Conditions of Sale") and any other written provisions mutually agreed upon." (*Id.* ¶ 18.) The terms of use in turn require purchasers to agree to a Kansas choice of law provision and to file suit in the District of Kansas (or Kansas state court). (*Id.* ¶ 19.) Consumers who purchase devices through defendants' website, or who register a device with defendants after purchasing from an authorized dealer, are required to create an account and agree to the "Terms and Conditions," provided on defendants' webpage.[4]

Plaintiff is an Illinois resident. (*Id.* ¶ 7.) In 2011, before purchasing his NÜVI device, plaintiff reviewed defendants' website, which then and now advertises and offers for sale various NÜVI products. (*Id.* ¶¶ 7, 21.) Plaintiff reviewed information concerning several models, including the NÜVI 2460. (*Id.* ¶ 7.) On August 5, 2011, plaintiff purchased his NÜVI 2460 LMT GPS device for $259.99 from J&R, an authorized dealer of defendants. (*Id.* ¶ 8.) Immediately after purchasing the device, plaintiff registered the device with defendants, which plaintiff contends is an essential step for NÜVI 2460 owners and is required in order to access and update many essential NÜVI functions, including map updates needed to ensure that NÜVI devices function properly. (*Id.*)

Defendants argue that, because plaintiff is an Illinois resident who purchased his device through an authorized dealer in another state, it is not plausible to infer that a consumer transaction occurred in Kansas. The court disagrees. Under the facts presented in this case, it is plausible to infer that plaintiff's purchase of the NÜVI 2460 was a Kansas consumer transaction.

The court is mindful that, where a consumer transaction occurs outside Kansas, "the KCPA does not provide a nationwide basis for liability against Kansas companies, based solely upon their presence in this state." *Howard v. Ferrellgas Partners, L.P.*, No. Civ. A. 10-2555-JTM, 2011 WL

---

[3] www.garmin.com/en-US/legal/shopterms
[4] www.garmin.com/en-US/legal/terms-of-use

3299689, at *7 (D. Kan. Aug. 1, 2011).  However, defendants' presence in the state is but one factor the court considers in determining where the consumer transaction ultimately occurred.

Defendants are a "supplier" under the KCPA, which is defined as a "manufacturer, distributor, dealer, seller, lessor, assignor, or other person who, in the ordinary course of business, solicits, engages in or enforces consumer transactions, whether or not dealing directly with the consumer."  Kan. Stat. Ann. § 50-624(l).  Solicitation by a supplier with respect to the sale of consumer goods is deemed a "consumer transaction."  *Id.* § 624(c).  A solicitation by a supplier may be sufficient to subject a supplier to the requirements and penalties of the KCPA ***regardless of whether the solicitation results in a sale, lease or other disposition of property within the State of Kansas***.  *Griffin v. Sec. Pac. Auto. Fin. Servs. Corp.*, 33 F. Supp. 2d 926, 931 (D. Kan. 1998) (finding defendant's solicitation to sell an automobile, in and of itself, constituted a consumer transaction); *Watkins v. Roach Cadillac, Inc.*, 637 P.2d 458, 463 (Kan. Ct. App. 1981).   Defendants contend that they could not have "solicited" plaintiff because plaintiff never alleged he was in Kansas and that the only basis supporting plaintiff's KCPA claim is the fact that defendants maintain a national website.

Foremost, plaintiff's presence in Kansas is not a prerequisite to finding that defendants solicited plaintiff; rather, "[s]olicitation in Kansas may result where a substantial number of statements about the product in question are made in Kansas."  *Howard*, 2011 WL 3299689, at *7 (citation omitted).  Indeed, Kansas courts have held that consumer transactions can occur within the state for purposes of the KCPA even when the alleged misrepresentations were made, and the ultimate sale occurred, outside the state.  *See*, *e.g., State ex rel. Kline v. Berry*, 137 P.3d 500, 505 (Kan. Ct. App. 2006) (finding consumer transaction within the state where the initial solicitation occurred in Kansas, but the contract was signed in Missouri and any misrepresentations concerning the property occurred in

Missouri); *Watkins,* 637 P.2d at 462-63 (finding consumer transaction within Kansas based on solicitations when the alleged deceptive act and disposition of property occurred in Missouri).

Moreover, defendants misconstrue plaintiff's allegations: Plaintiff is not relying ***solely*** on defendants' presence in the state or the fact that defendants maintain a national website. Indeed, such exclusive reliance would be misplaced.[5] Rather, plaintiff alleges that, ***before*** he purchased his NÜVI 2460, plaintiff visited defendants' website and obtained information regarding the device, a fact which distinguishes the instant case from *Shepard v. DineEquity, Inc.*, No. Civ. A. 08-2416-KHV, 2009 WL 8518288, at *10-11 (D. Kan. Sept. 25, 2009) (finding plaintiffs failed to allege defendant solicited *them* in Kansas where plaintiffs never contended they visited defendant's website).

Additionally, plaintiff adequately alleges in his First Amended Complaint that defendants' Kansas headquarters is where defendants conduct substantially all of their business activities. For example, Kansas is where defendants design, develop, warehouse, and distribute their products. (Am. Compl. ¶ 15.) Significantly, Kansas also is where marketing support is provided for American sales. (*Id.*) Most (if not all) product functions, like customer support, repairs and warranty issues, are located in Kansas. (*Id.* ¶¶ 16-19.) Given that almost every aspect of the sale of NÜVI devices–including solicitation thereof–originates from and occurs in Kansas, it is plausible that plaintiff will be able to prove facts showing that he was solicited by defendants in Kansas, rendering inapposite *Howard*, 2011 WL 3299689, at *7 (finding plaintiff alleged only that sales technique "emanated" from Kansas but never alleged that defendant solicited him from Kansas).

In addition to the fact that plaintiff visited defendants' website for NÜVI information before his purchase, the court also considers the fact that plaintiff registered his device with defendants

---

[5] *See Montgomery v. Sprint Spectrum, L.P.*, No. Civ. A. 07-2227-JTM, 2007 WL 3274833, at *6 (D. Kan. Nov. 6, 2007) (stating a consumer transaction is not deemed to occur in Kansas simply because of a defendant's presence in the state); *Kluin v. Am. Suzuki Motor Corp.*, 56 P.3d 829, 837 (Kan. 2002) (finding defendant's passive website and advertisements in national magazines were deemed insufficient to support personal jurisdiction over KCPA claims).

immediately after his purchase. (Am. Compl. ¶ 8.) Defendants first argue that plaintiff's product registration, wherein plaintiff accepted the Kansas choice-of-law provision, cannot by itself transform the sale into one that occurred in Kansas. With this proposition, the court agrees.[6]

Alternatively, defendants argue that plaintiff's post-sale activities (e.g., registration of the device) do not transform the sale into one that occurred in Kansas. The court agrees that, under many circumstances, post-sale activities in Kansas generally have no bearing on whether a consumer transaction occurred within the state. However, as pointed out in *Suhr v. Aqua Haven, LLC*, a case cited by neither party, "[c]ourts liberally construe the KCPA to protect consumers against deceptive practices in connection with a transaction, which extends beyond the sale *to include subsequent warranty service provided in relation with the sale*." No. Civ. A. 11-1165-EFM, 2013 WL 3778928, at *11 (D. Kan. July 18, 2013) (emphasis in original omitted; emphasis herein added).

Here, plaintiff has alleged that defendants require purchasers to register their devices to obtain warranty service and to ensure device functionality, including access to essential NÜVI functions, features, and map updates. (Am. Compl. ¶¶ 8, 19, 43-44.) The court believes that defendants' warranty terms, along with updated functions, features, and maps were an integral part of plaintiff's benefit of the bargain. As such, for plaintiff to receive his full benefit of the bargain, he was required to register his device on defendants' interactive website, create an account on that website, and agree to defendants' terms and conditions. (*Id.* ¶ 20.) Accordingly, registration on defendants' website is essential to receive full value of the product; the registration process is anything but passive; and other than plaintiff's actual physical location, every aspect of registering the product occurred Kansas. The court finds that defendants' sale of the NÜVI 2460 to plaintiff was a consumer transaction within the state. The court denies defendants' motion to dismiss Counts II and III.

---

[6] *See Montgomery*, 2007 WL 3274833, at *6 (holding that Kansas choice of law provision cannot create a KCPA violation where the statute itself has no application).

### B. Express Warranty

Plaintiff alleges that defendants' one year express warranty is unconscionable. Plaintiff contends that defendants knew, but did not disclose, that their batteries were defective. In support of this contention, plaintiff alleges that defendants have prior experience with defective NÜVI batteries and have received a number of customer complaints concerning the batteries. (Am. Compl. ¶¶ 28-29.)

As an initial matter, the court finds it difficult to reconcile plaintiff's express warranty claim with the facts plaintiff alleged in his First Amended Complaint. Plaintiff alleges that defendants offer a one-year limited warranty that does ***not*** include "consumable parts, such as batteries, unless product damage has occurred due to a defect in materials or workmanship." (*Id*. ¶ 35.) Indeed, plaintiff expressly and specifically alleges in his First Amended Complaint that "[i]n sum, Garmin's warranty excludes batteries, and advises customers that they may not replace their batteries without voiding their warranty." (*Id.* ¶ 36.) In what appears to be an about-face, plaintiff states in his briefing: "Garmin's express warranty clearly covers the type of defect at issue here, which arises from an alleged defect in materials or workmanship with respect to PND batteries that causes them to fail well before the end of their expected useful life. (*See*, *e.g., id.*, ¶¶ 1, 27, 33.)[.]" (Pl. Br. at 11.) The two allegations appear facially inconsistent. However, the court believes dismissal of the express warranty claim at this juncture is premature because plaintiff sufficiently alleges, although barely, that the express warranty is substantively and procedurally unconscionable.[7]

Plaintiff argues that the warranty is substantively unconscionable because defendants knew or should have known that NÜVI batteries were defective at the time of sale.[8] At the outset, the court

---

[7] "The burden of establishing unconscionability is on the party attacking the contract. Whether a contract is unconscionable under the Uniform Commercial Code or the Kansas Consumer Protection Act is a question of law." *Santana v. Olguin*, 208 P.3d 328, 332 (2009) (citations omitted).

[8] The court notes that plaintiff makes the following allegation: "A Li-Io battery's lifespan is approximately 1,000 charge cycles, or about 4 years under normal operating conditions." (Am. Compl. ¶ 24). Plaintiff does not cite from where he obtained this information, nor does plaintiff give any indication that defendant made this representation.

recognizes that "mere knowledge that a part will ultimately fail, after the expiration of a warranty period, is insufficient to provide a basis for a breach of express warranty claim. Moreover, such knowledge does not alone make [a] limitation unconscionable." *Henderson v. Volvo Cars of N. Am., LLC*, No. Civ. A. 09-4146-DMC, 2010 WL 2925913, at *9 (D.N.J. July 21, 2010) (citing *Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 519-20 (D.N.J. 2008)). Plaintiff also alleges procedural unconscionability, claiming he (and class members) had no meaningful choice in determining the one-year time limitation (which favors defendants) and that a gross disparity in bargaining power existed because defendants knew or should have known that NÜVI devices would fail shortly after their express warranty expired.

Plaintiff alleges that "[i]t appears that at least thousands of NÜVI owners have contacted Garmin to complain about premature battery failure and/or attempted to file a warranty claim." (Am. Compl. ¶ 28.) Plaintiff specifically identifies eight (8) customer complaints, only two of which occurred before plaintiff purchased his NÜVI device. Plaintiff also cites to the fact that in 2010, defendants recalled 1.3 million NÜVI devices manufactured with defective batteries sourced from third-party providers because the batteries were prone to overheating. (*Id.* ¶ 29.)

The court views with skepticism the extent to which this evidence–the eight listed consumer complaints and a 2010 recall of batteries prone to overheating (but apparently unrelated to battery life)–is probative of whether defendants knew, but failed to disclose, that the NÜVI batteries were defective. However, the court believes these are well-pleaded facts, as distinguished from conclusory allegations, that the court accepts as true at this stage, and these factual allegations generally support plaintiff's theory. *See Henderson*, 2010 WL 2925913, at *9 ("Court will not dismiss Plaintiffs' breach of express warranty claims at this early stage" where defendant allegedly knew of defect and plaintiffs claimed warranty terms were unconscionable); *In re Samsung DLP Television Class Action Litig.*, No.

Civ. A. 07-2141-GEB, 2009 WL 3584352, at *5 (D.N.J. Oct. 27, 2009) (denying motion to dismiss express warranty claims because "both 'procedural' and 'substantive' unconscionabilty have been sufficiently plead in the amended complaint."). The court cautions plaintiff that he will have to come forward with evidence more compelling than a handful of customer complaints and an unrelated battery recall[9] to withstand further dispositive rulings on his express warranty claim. Moreover, as this litigation proceeds, the court expects plaintiff will refine and better articulate the precise basis for his express warranty claim. But plaintiff's existing factual allegations about defendants' prior knowledge of the defective batteries is sufficient at this stage, and plaintiff should be afforded the opportunity to conduct formal discovery on this issue. The court denies defendants' request to dismiss Count VI.

### C. Implied Warranty Claim

Plaintiff alleges that he and putative class members have suffered damages as a result of defendants' breach of the implied warranty of merchantability. Defendants argue that plaintiff's claim fails as a matter of law because plaintiff lacks the requisite privity to assert an implied warranty claim against defendants.

As a general rule, an implied warranty of merchantability is "not to extend to a remote seller or manufacturer of an allegedly defective product, which is not inherently dangerous, for only economic loss suffered by a buyer who is not in contractual privity with the remote seller or manufacturer." *Prof'l Lens Plan, Inc. v. Polaris Leasing Corp.*, 675 P.2d 887, 898-99 (Kan. 1984). However, the KCPA has abolished the privity requirement in consumer transactions. Kan. Stat. Ann. § 50-639(b) ("[N]o action for breach of warranty with respect to property subject to a consumer transaction shall fail because of a lack of privity between the claimant and the party against whom the claim is made."); *Gonzalez v. Pepsico, Inc.*, 489 F. Supp. 2d 1233, 1246 (D. Kan. 2007).

---

[9] Plaintiff does not allege that *his* battery was "prone to overheating" or was the subject of the purported 2010 recall.

-11-

Defendants argue that plaintiff's purchase of the NÜVI 2460 was not a consumer transaction under the KCPA and that, as a result, he must establish privity with defendants to assert an implied warranty claim. However, as previously set forth herein, the court has found that plaintiff's purchase of the NÜVI 2460 was a Kansas consumer transaction. Accordingly, plaintiffs' implied warranty claim against defendants does not fail for lack of privity. *Suhr*, 2013 WL 3778928, at *8.

Even if privity were required, the court finds plaintiff has alleged facts sufficient to survive a motion to dismiss. Plaintiff alleges he purchased his NÜVI 2460 from J&R, a company that defendants list as one of their authorized dealers. (Am. Compl. ¶ 8.) Under Kansas law, an agency relationship can establish privity sufficient to state an implied warranty claim. *See Daitom, Inc. v Pennwalt Corp.*, No. Civ. A. 80-2080-EEO, 1987 WL 93958, at *4-5 (D. Kan. Jan. 30, 1987).

Defendants incorrectly assert that plaintiff cannot establish an agency relationship under *Professional Lens Plan, Inc. v. Polaris Leasing Corp.*, 710 P.2d 1297 (Kan. 1985) ("*Polaris II*"). In *Polaris II*, the court held that a retail enterprise offering for sale a particular product, or a manufacturer informing a potential customer that a particular item may be purchased through a retailer, does necessarily transform the retailer into an agent of the manufacturer. 710 P.2d at 1303-04. However, *Polaris II* involved the trial court's entry of ***summary judgment*** on the agency issue ***after the parties had conducted discovery***. *Id.* ("We have carefully reviewed the record before us and conclude that the trial court was correct in entering summary judgment. We find no evidence to indicate either an implied or an ostensible agency.").[10] Here, plaintiff has yet to obtain discovery on the relationship between defendants and their authorized dealers. At this juncture, plaintiff has alleged with requisite plausibility that J&R, defendants' authorized dealer, was acting as defendants' agent and that, as a

---

[10]Based on a considerable evidentiary record, the Kansas Supreme Court affirmed the trial court's finding that the dealer was not the manufacturer's agent because there, the relationship was not governed by an express agency relationship and, among other things, "anyone" who wanted to sell the manufacturer's products could do so. 710 P.2d 1297, 1303-04 (1985).

result, privity between plaintiff and defendants exists. The court holds that plaintiff has stated a claim for breach of the implied warranty of merchantability and, accordingly, denies defendants' request to dismiss Count IV.

### D. Unjust Enrichment

Plaintiff asserts that the battery in his NÜVI device failed before the end of its expected useful life and that defendants have been unjustly enriched by these NÜVI devices that are inferior to the devices defendants promise to deliver. Am. Compl. ¶¶ 9, 24, 89. Defendants argue that plaintiff cannot state an unjust enrichment claim because plaintiff has simultaneously alleged the existence of an express warranty. *See Orica New Zealand Ltd. v. Searles Valley Minerals Operations Inc.,* No. Civ. A. 04-2310-KHV, 2005 WL 387659, at *3 (D. Kan. Feb. 17, 2005) (holding that dismissal of unjust enrichment claim appropriate where contract between the parties exists).

However, in this case, plaintiff also alleges that the express warranty is unconscionable and unenforceable. Am. Compl. ¶ 94. As a result, plaintiff's alternative theories of recovery against defendants cannot be said to be precluded as a matter of law until it is clear that the express warranty is valid and enforceable. *See Ice Corp. v. Hamilton Sundstrand Inc.*, 444 F. Supp. 2d 1165, 1171 (D. Kan. 2006) (denying motion to dismiss alternative action for unjust enrichment against defendant until it is clear that the contract at issue is valid and enforceable). The court denies defendants' request to dismiss plaintiff's unjust enrichment claim set forth in Count V.

### E. Declaratory Relief

In Count I, plaintiff seeks a declaration pursuant to 28 U.S.C. § 2201 "that NÜVI devices have common defects in their design and/or manufacture and that any future repairs involving premature battery failure should be covered under the Garmin's express limited warranty or the implied warranty of merchantability." (Am. Compl. ¶ 60.) In Count II, plaintiff seeks an injunction "preventing

Defendants from refusing to pay for the repair or replacement of original batteries that fail prior to the end of their expected useful life." (*Id.* ¶ 73.) In Counts III and IV, plaintiff requests an injunction "prohibiting Defendants from refusing to cover the repair or replacement costs for original batteries that fail prior to the end of their useful life." (*Id.* ¶¶ 79, 86.)

The Declaratory Judgment Act provides that a court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). A district court has broad discretion whether to issue a declaratory judgment. *CZ-USA, Inc. v. Timber Valley Assocs., Inc.*, No. Civ. A. 12-2173-RDR, 2012 WL 3442105, at *2 (D. Kan. Aug. 14, 2012) (citing *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 136 (2007)).

The Tenth Circuit looks at five factors to determine whether a court should entertain a declaratory judgment action, which are: (1) whether a declaratory action would settle the controversy; (2) whether it would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is being used merely for "procedural fencing" or "to provide an arena for a race to *res judicata*"; (4) whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective. *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1994).

In looking to the relevant factors, the court determines that declaratory relief is inappropriate under the facts of this case. Declaratory judgment is inappropriate to merely adjudicate past conduct or to proclaim that one litigant is liable to another. *Corliss v. O'Brien*, 200 F. App'x. 80, 84-85 (3d Cir. 2006). Rather, a declaratory judgment is meant to define the legal rights and obligations of the

parties in anticipation of some future conduct, not simply to proclaim liability for a past act. *See Utah Animal Rights Coal. v. Salt Lake City Corp.*, 371 F.3d 1248, 1266 (10th Cir. 2004).

Plaintiff seeks a declaration that the NÜVI batteries are defective; similarly, Counts II-IV will require a determination of whether the NÜVI batteries are defective. Plaintiff contends, however, that the requested relief in the respective claims differs because the declaratory relief is "forward-looking" and will "prevent[ Garmin] from continuing these practices into the future." (Pl. Br. at 18.) The court, however, questions whether this is a valid distinction at all, because the injunctions requested in Counts II, III, and IV are similarly "forward-looking" and seek essentially the same relief regarding the existence of a purported battery defect and subsequent coverage of the defect. Indeed, the declaratory relief plaintiff seeks, while worded slightly differently, is effectively the same as the injunctive relief he seeks in Counts II-IV. As such, the court does not believe declaratory relief will settle the controversy, nor will it serve a useful purpose, because the claim and the relief requested therein are in material respects duplicative of plaintiff's other claims. Because the parties' rights with respect to the alleged battery defect will be decided under the KCPA and warranty claims, there is no need for relief in the form of a declaratory judgment. Thus, the court in its discretion dismisses plaintiff's declaratory judgment claim.

**IV.	Order**

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss (Doc. 16) as to Count I is granted.  Count I of plaintiff's First Amended Complaint is hereby dismissed.

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss (Doc. 16) as to Counts II, III, IV, V and VI is denied.

Dated this 23rd day of January, 2014 at Kansas City, Kansas.

                                                 s/ Carlos Murguia  
                                                **CARLOS MURGUIA**  
                                                United States District Judge