IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **BRIAN MEYERS, on behalf of himself and all others similarly situated,** ) ) ) **Plaintiff,** ) ) v. ) ) **GARMIN INTERNATIONAL, INC.,** ) **et al.,** ) ) **Defendants.** ) ) | Case No. 13-CV-2416-CM-GLR |

## MEMORANDUM AND ORDER

Brian Meyers ("plaintiff"), on behalf of himself and all others similarly situated, brings this action against Garmin International, Inc. and Garmin U.S.A., Inc. (collectively "defendants"). Defendants have filed a Motion for Summary Judgment (Doc. 123), requesting judgment as a matter of law on plaintiff's claims of deceptive practices (misrepresentations and omissions) and unconscionability under the Kansas Consumer Protection Act[1] ("KCPA") (Counts II and III); breach of implied and express warranties (Counts IV and VI); and unjust enrichment (Count V). In response, plaintiff opposes summary judgment only on Count II—plaintiff's willful omission claim under the KCPA. Given there is no opposition to the court granting summary judgment on the remaining counts, the court grants summary judgment to defendants on Counts III, IV, V, and VI.[2] The court now turns to plaintiff's willful omission claim under the KCPA.

---

[1] Kan. Stat. Ann. §§ 50–626(a); 50–627(a).
[2] Because Count I seeks declaratory relief related to defendants' express and implied warranties, dismissal of Count I also is appropriate.

-1-

**I.    Factual Background**

Defendants manufacture, market, and sell NÜVI-brand global positioning systems ("GPS"). Defendants refer to NÜVI GPS devices as "PNDs," or portable navigation devices, representing that all PNDs include a rechargeable battery so that the devices are suitable for on-the-go use. Defendants carry out their American operations from their Olathe, Kansas headquarters.

On August 5, 2011, plaintiff purchased a Garmin NÜVI 2460 LMT GPS device ("NÜVI 2460") from J&R Music and Computer World ("J&R"), which is an authorized dealer of defendants. J&R is located in New York, New York. Plaintiff purchased his NÜVI 2460 from J&R by calling J&R and placing his order by telephone. Plaintiff claims that he viewed defendants' website prior to purchasing his NÜVI 2460. Defendants' website stated that the battery in a NÜVI 2460 will last up to three hours. Defendants' website did not include information regarding the battery's number of charge cycles or number of years a NÜVI 2460 battery should last.

Prior to his purchase, plaintiff had no conversations with any of defendants' employees specifically regarding the purchase of his NÜVI 2460 and no conversations related to the battery life or expectations regarding the battery life of the NÜVI 2460. Plaintiff states that he spoke with a Garmin representative in February of 2011 regarding his NÜVI 670—a GPS plaintiff owned before his NÜVI 2460 purchase. Plaintiff claims this employee stated that defendants expect their batteries to last up to four years. (Doc. 90-3 at 362.) Plaintiff testified that this employee made no representation or otherwise created any expectation about the number of charge cycles a battery should last. (*Id.* at 362 and 376.)

After plaintiff purchased his NÜVI 2460 device in August 2011, and before first using it, plaintiff registered the device in Illinois using defendants' website. Then, in December 2012, plaintiff

claims he first noticed an alleged battery failure, asserting that the battery stayed powered on for only thirty minutes at that time. Plaintiff was at his home in Illinois at the time of the first alleged failure. Plaintiff did not contact defendants at that time about the alleged battery failure. It was not until April 2013 that plaintiff contacted defendants, when plaintiff's NÜVI 2460 battery allegedly stopped functioning for more than fifteen to thirty minutes at a time without being connected to a power source.

Plaintiff's expert, Dr. Pecht, defines the end of a lithium-ion battery's useful life as a depletion of its discharge capacity to less than 80% of its initial capacity. When plaintiff's NÜVI 2460 was tested four years after it was manufactured, the battery tested at 84% capacity and had, therefore, not reached the end of its useful life. In responding to this fact, plaintiff appears to abandon the definition of useful life as being 80% at four years and instead argues that his device will not retain 80% or more of its initial capacity up to 1,000 charge/discharge cycles. (Doc. 130 at 7.)

## II. Legal Standards

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A "genuine" factual dispute requires more than a mere scintilla of evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the initial burden of showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In making the summary judgment determination, the court must view the evidence and reasonable inferences in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). However, the nonmoving party may not rest on the pleadings but must set forth specific facts. *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990). Ultimately, the court evaluates "whether the evidence presents a

sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 252.

**III.     Analysis**

Prior to discovery and before expert witnesses tendered reports and testimony, defendants moved to dismiss this case, which the court denied. (Doc. 24.)  At that time, the court considered whether the sale of the NÜVI 2460 to plaintiff constituted a consumer transaction under the KCPA. The court determined that is was "plausible" to infer that the sale was a Kansas consumer transaction. (*Id.* at 5.)  In so finding, the court cited as support the fact that plaintiff visited defendants' website before his NÜVI 2460 purchase *and* that plaintiff had registered his device with defendants immediately after his purchase. (*Id.* at 7–8.)  In considering whether plaintiff's post-sale conduct could form the basis of a KCPA consumer transaction, the court stated:

> The court agrees that, under many circumstances, post-sale activities in Kansas generally have no bearing on whether a consumer transaction occurred within the state. However, as pointed out in *Suhr v. Aqua Haven, LLC*, a case cited by neither party, "[c]ourts liberally construe the KCPA to protect consumers against deceptive practices in connection with a transaction, which extends beyond the sale *to include subsequent warranty service provided in relation with the sale*." No. Civ. A. 11-1165-EFM, 2013 WL 3778928, at *11 (D. Kan. July 18, 2013) (emphasis in original omitted; emphasis herein added).

(*Id.* at 8.)  Notably, the court emphasized the warranty language in the case excerpt because the court found it significant, back then, that plaintiff was asserting numerous warranty claims, *including that defendants' attempt to exclude the implied warranty of merchantability through defendants' express limited warranty was an unconscionable practice in violation of § 50-627 of the KCPA*.  However, in response to defendants' summary judgment motion, plaintiff did not oppose judgment on his unconscionable practices claim under § 50-627 of the KCPA.  Rather, plaintiff opposed judgment only on the claim that defendants engaged in deceptive practices in violation of § 50-626 of the KCPA.  So

now plaintiff alleges only that defendants engaged in deceptive practices by willfully omitting material information about the NÜVI 2460 battery *before* plaintiff's purchase.  Plaintiff no longer alleges that defendants engaged in unconscionable practices after the purchase by breaching purported implied and express warranties.  Because plaintiff makes no claim that defendants violated the KCPA *after* he purchased the NÜVI 2460 by breaching or otherwise disavowing any express or implied warranty, plaintiff's post-sale conduct in registering the device is irrelevant to plaintiff's only remaining claim—a willful omission claim that has nothing to do with the post-sale activities of either plaintiff or defendants.  The court therefore turns to the remaining record evidence to determine whether plaintiff's purchase of his NÜVI 2460 was a consumer transaction under the KCPA.

### A. Was Plaintiff's Purchase a Consumer Transaction Within the State of Kansas?

The KCPA prohibits deceptive and unconscionable acts in connection with a consumer transaction.  Kan. Stat. Ann. §§ 50–626(a), 50–627(a).  The legislature has defined "consumer transaction" as the "sale, lease, assignment or other disposition for value of property or services *within this state* . . . to a consumer; or a solicitation by a supplier with respect to any of these dispositions."  Kan. Stat. Ann. § 50–624(c) (emphasis added).  A sale by a supplier (which defendants are) may be considered a consumer transaction under the KCPA if the solicitation occurred within the state of Kansas.  *Griffin v. Sec. Pac. Auto. Fin. Servs. Corp.*, 33 F. Supp. 2d 926, 931 (D. Kan. 1998); *Watkins v. Roach Cadillac, Inc.*, 637 P.2d 458, 463 (Kan. Ct. App. 1981) (finding KCPA consumer transaction where solicitation to lease vehicle and test drive of the vehicle occurred in Kansas).

In *Montgomery v. Sprint Spectrum, L.P.*, the plaintiff, a Texas resident, sued a Kansas phone company under the KCPA, alleging that the company's collection of a Texas reimbursement fee violated the KCPA.  No. 07-2227-JTM, 2007 WL 3274833, at *1 (D. Kan. Nov. 6, 2007).  The court dismissed the KCPA claim and found that "[t]he KCPA is not intended to serve as a nationwide basis

for liability against Kansas companies, based solely upon their presence in this state, when the actual consumer transaction does not occur here." *Id.* Indeed, a company's presence or maintenance of a website in Kansas does not convert to a KCPA consumer transaction every purchase of a good from that company. *See Shepard v. DineEquity, Inc.*, No. CIV.A. 08-2416-KHV, 2009 WL 8518288, at *11 (D. Kan. Sept. 25, 2009) (finding no consumer transaction under the KCPA even though Applebees made alleged misrepresentations on its website that was maintained in Kansas); *see also Whitton v. Deffenbaugh Indus., Inc.*, No. 12-2247-CM, 2014 WL 2602381, at *6 (D. Kan. June 11, 2014) (reconsidered on other grounds) (finding no consumer transaction under KCPA for services rendered in Missouri even though defendant sent invoices from Kansas containing disputed fees and collected payment of those fees in Kansas); *Howard v. Ferrellgas Partners, L.P.*, No. 10-2555-JTM, 2011 WL 3299689, at *7 (D. Kan. Aug. 1, 2011) (finding it "would not be enough to support a KCPA violation . . . that the predicate sales technique be pioneered in Kansas and used in another state"); *Kluin v. Am. Suzuki Motor Corp.*, 56 P.3d 829, 838 (Kan. 2002) (finding no solicitation and no consumer transaction under the KCPA even though a Kansas resident visited defendant's website and received advertisements while in Kansas before purchasing motorcycle in Oklahoma).

When asked what conduct formed the basis for defendants' solicitation of plaintiff, plaintiff stated in his interrogatory responses that, prior to purchasing the device, he "reviewed information concerning several models, including the [NÜVI 2460, which] identified various product features and specifications. It also identified the battery installed in the NUVI device…[t]he webpage did not disclose that the battery would fail in fewer than two years." (Doc. 128 at 9.) Putting aside the fact that plaintiff's battery held an 84% charge at four years, and putting aside the fact that plaintiff never stated in his interrogatory responses that defendants' failure to disclose information about **the number of charge cycles** was a deceptive practice, plaintiff has failed to show that his viewing of defendants'

website—standing alone—was a solicitation in Kansas.  Moreover, the fact that defendants maintain servers in Kansas does not convert plaintiffs' purchase to a consumer transaction under the KCPA, especially given that plaintiff did not order his device through defendants' website, and an individual accessing product information on defendants' website in Illinois would not have accessed defendants' actual physical servers in Kansas.

The court is mindful it previously determined that plaintiff's visit to defendants' website could *plausibly* form the basis for a Kansas consumer transaction.  However, on summary judgment, plaintiff has failed to convince this court that his visit to defendants' website—where defendants provided no information about the number of charge cycles or number of years a NÜVI 2460 should last—was a solicitation in Kanas and, therefore, a consumer transaction under the KCPA.  To hold otherwise would impermissibly permit plaintiff to use the KCPA as a nationwide basis for liability against defendants simply because they are Kansas companies that maintain a website.

Plaintiff also testified that he had a conversation with a Garmin employee in February 2011 about battery life, but the court notes plaintiff did not identify in his sworn interrogatory response that this February 2011 conversation was a solicitation by defendants in the state of Kansas.  In any event, at the time of the conversation, plaintiff was calling to obtain information from Garmin on a different device—his NÜVI 670—which is not a part of this lawsuit.  Moreover, there is no evidence in the record that the Garmin employee to whom plaintiff spoke was located in the state of Kansas when he or she allegedly made the statement about battery life, and as admitted by plaintiff, he had no conversation with any Garmin employee regarding the number of charge cycles that a NÜVI 670 or NÜVI 2460 should have.  The court does not believe this purported conversation with defendants' employee was a solicitation of the NÜVI 2460, and plaintiff did not identify the conversation as a solicitation.

Plaintiff did not purchase his NÜVI 2460 through defendants' website; rather, plaintiff telephoned J&R, which is a dealer located in New York, to order the NÜVI 2460, which plaintiff received and registered in Illinois. Plaintiff experienced his first alleged battery failure in Illinois, and subsequently contacted defendants while in Illinois after the one-year warranty period.[3] Under these facts, the court finds *Mongomery*, *Whitton*, *Shepard*, and *Kluin* to be instructive. Plaintiff's purchase of his NÜVI 2460 was not a consumer transaction within the state of Kansas. The court therefore grants summary judgment to defendants on plaintiff's KCPA willful omission claim (Count II).

### B. Class Certification

Prior to the summary judgment briefing, plaintiff filed a Motion for Class Certification (Doc. 90). In his motion, plaintiff asked the court to certify this case as a class-action and appoint him as class representative. Given that plaintiff has abandoned his warranty claims and cannot maintain his only remaining claim under the KCPA, the court denies plaintiff's motion to certify this case as a class-action.

**IT IS THEREFORE ORDERED** that plaintiff's Motion for Class Certification (Doc. 90) is denied and defendants' Motion for Leave to File Surreply (Doc. 119) is denied as moot. The court grants defendants' Motion for Summary Judgment (Doc. 123) in its entirety and dismisses this case.

Dated this 30th day of March, 2016, at Kansas City, Kansas.

s/ Carlos Murguia
**CARLOS MURGUIA**
**United States District Judge**

---

[3] Defendants claim that the one-year warranty excludes consumable parts, such as batteries. (Doc. 128 at 7.)